JOHN WILKINSON, WILLIAM F. HAVEMEYER, and AZA-RIAH C. FLAGG, Trustees of the Terre Haute, Alton and St. Louis Railroad Company, Appellants, *v.* EDWARD H. FLEMING, Appellee.

#### APPEAL FROM ST. CLAIR.

The trustees of a railroad company, if they do business in the name of the company, are liable to be sued in that name, and their property is responsible for liabilities incurred while transacting the business under that name.

THIS was an action of replevin in the Circuit Court of St. Clair county. The facts are fully stated in the opinion.

G. TRUMBULL, for Appellants.

It appears, in this case, that the second mortgage of the Terre Haute, Alton and St. Louis Railroad Company, having become forfeited, they surrendered the road, December 12, 1859, to the trustees, the appellants, and that a short time afterwards, the appellants purchased of said corporation the personal property appertaining to said road, being a part of the property in controversy, the benches having been afterwards purchased (not from the corporation).

. That after the surrender, the appellants, through their superintendent, Mr. Griswold, operated said road; books were kept, blank papers made, tolls and freights collected, all in their names. And the business of said road was done and managed in their names; that sometimes, for short, the word "trustees" was used, but in all contracts the individual names of the appellants were used; that notwithstanding said surrender of the road for the purpose of retaining the franchise, the corporation still had a board of directors, and a president, Mr. Butler, of New York, succeeding Mr. Griswold; that while said appellants were so operating the road, to wit, in June, 1860, one Shook, while traveling upon said railroad, received an injury, and brought suit against the Terre Haute, Alton and St. Louis Railroad Company, and obtained judgment, issued execution, and by virtue thereof, the defendant, the appellee, levied upon the property in controversy.

The question which arises, is this: Is the personal property of the appellants, which they acquired by purchase, liable to be taken on execution, on a judgment against the corporation —Shook having made his election to sue the corporation, which had a legal existence and a president, instead of appellants who were then operating the road, can he now turn round and charge appellants with the judgment? It would seem clearly not. Before the appellants could be charged they should have been made party to the suit, and have had an opportunity to have been heard. They had no interest in defending a suit against the corporation. Are the appellants

any more liable for a judgment obtained against the corporation after the surrender than before? It would hardly be contended that they are liable for a judgment rendered against the corporation before the surrender. In the case of *Palmer* v. *Forbes et al.*, 23 Ill. 318, the court say, speaking of the power of trustees to whom the railroad in that case had been surrendered, " that the trustees or purchasers are endowed with sufficient powers which are undoubtedly in the nature of a franchise, to enable them to discharge the duty which the public have a right to demand of them by keeping in repair, maintaining and operating the road, and to demand and receive a suitable reward therefor, and for this purpose, they may use their own names or adopt any other convenient business name, as any other individual or company may do, and they are under no necessity of adopting the name of the company to whose right in the property they have succeeded."

The Quincy and Chicago Railroad Company had transferred their road to trustees, Forbes and others, who gave power of attorney to Bushnell to operate the road. He had been the former president of the road. It is shown how the possession was changed. No visible change was made in the management of the road—the same officers and employees were continued. Bushnell notified the agents and employees of the change of possession. 17 Ill. 326.

Trustees in actual possession and management of a railroad are personally liable for contracts or torts of operatives employed upon the road, to the same extent as the corporation would have been, had it continued in possession. *Sprague* v. *Smith*, 29 Vt. 421; Pierce on Am. R. R. Cases, 244.

Notwithstanding a surrender of the property of the road, a suit would lie against the company. *Bruffett et al.* v. *Great Western R. R. Co.*, 25 Ill. 353. A contract was made with the company, in 1855, for transportation of hogs. In 1859, the legislature incorporated a company by the same name, which took possession of the road and operated it. Suit was brought against them on the old contract. *Held*, that the action was misconceived.

Wm. H. Underwood, for Appellee.

The property levied on in this case was not covered by the deeds of trust of the railroad corporation, as decided by this court in the case of *Hunt, Trustee,* v. *Bullock et al.,* 23 Ill. 320. To avoid the force of that decision, the trustees pretended to purchase and acquire said property as trustees, and hold it exempt from liabilities incurred even while they were exercising the franchises of said corporation, in the name of said corporation.

It was necessary for said trustees to use the name of said corporation while exercising its franchises. *Reed* v. *Bradley,* 17 Ill. 326.

And whether necessary or not, they did in fact so use the name of said corporation in a manner calculated, if not designed, to deceive all persons patronizing said road.

The trustees might have been sued in this case and held personally responsible. *Sprague* v. *Smith,* 29 Vt. R. 425.

So a corporation may have several names, and may be sued by the name by which it is known. Angell & Ames on Corporations, secs. 100, 645, 649, 650.

In the *Y. & M. L. R. R.* v. *Winans,* 17 How. R. 40, the Supreme Court of the United States say, " it is certainly true that the law will strip a corporation or individual of every disguise, and enforce a responsibility according to the very right in despite of their artifices. And it is equally certain, that in favor of the right, it will hold them to maintain the truth of the representations to which the public has trusted, and estop them from using their simulation as a covering or defense." 8 Wend. 480.

This court has already decided, that a corporation is responsible for materials taken by contractors under the charter to construct a public work. 15 Ill. 72; 20 Ill. 388. And for cattle killed by contractors in operating a part of a railroad before its completion. 22 Ill. 106, 108. And where persons are operating a railroad by contract with the company. 21 Ill. 649. And for misconduct and negligence of the lessees of such corporation. 20 Ill. 627; 22 Ill. 109; Redfield on R. R. 419, sec. 3.

It would have been impossible to have sued the trustees personally, as they are all non-residents, and an attachment will not lie for torts. *Moore* v. *Hamilton*, 2 Gilm. 431, 432. Their agents and conductors have generally no property in the State, and by the time judgment could be obtained against them, they would be out of the State.

The case of *Palmer* v. *Forbes*, 23 Ill. 318, was where the judgment was obtained against the old corporation, before the trustees took possession, and not, as in this case, for a cause of action arising afterwards.

BREESE, J. This was an action of replevin, commenced by the appellants, at the October term, 1861, of the St. Clair Circuit Court, to recover the possession of the following articles of personal property, viz. : five benches, one coal stove, one copying press, one safe, one clock, one desk, one table, one stool, one pair Fairbank's scales, one ladder, one truck, and one crowbar, unlawfully detained by said Fleming.

To which action the defendant put in several pleas. The first plea alleges that " the Terre Haute, Alton and St. Louis Railroad Company is a corporation, organized under the laws of the State of Illinois, etc. ; that, for the purpose of securing sundry debts, said corporation executed to appellants, as trustees, a deed of trust, and that the same having become forfeited, the plaintiffs, as trustees, under authority of said deed of trust, took possession of the franchise and effects of said corporation, among other things, the railroad track, cars, depots, etc., the goods and chattels in controversy, and as such trustees have held possession thereof ever since, and exercised said franchise, and operated said road. That while the trustees were so running the road, collecting and receiving the tolls for the conveyance of passengers and freight in the name of said corporation, one Aaron W. Shook, while traveling as a passenger on said road, received a bodily injury, and instituted suit against said corporation, and recovered damages;" with the averments contained in the third plea.

The second plea was, property in defendant and not in the plaintiffs—upon which, issue was joined.

Wilkinson et al., Trustees, etc., *v.* Fleming.

The third plea was as follows: "And for a further plea in this behalf the said defendant says, *actio non*, because he says that one Aaron W. Shook, on the 14th day of May, 1861, recovered judgment in the Monroe Circuit Court in said State, against the Terre Haute, Alton and St. Louis Railroad Company, for the sum of three thousand dollars damages, and costs, as appears of record in said court; and afterwards, to wit, on the 6th day of July, 1861, an execution of that date was issued on said judgment by the clerk of the Circuit Court of the said county of Monroe, in due form of law, directed to the sheriff of the county of St. Clair, in the name of the People of the State of Illinois, commanding such sheriff of the county of St. Clair, Illinois, that of the goods, chattels, lands, tenements, and real estate of said corporation, he make the said sum of three thousand dollars, with interest at six per cent. from the 14th day of May, 1861, and also the further sum of twenty-four dollars and sixty-five cents, costs of suit, and to have that money at the office of the said clerk of the Circuit Court of Monroe county, at the end of ninety days from the date of said writ; and afterwards, to wit, on the 10th day of July, 1861, at 11 o'clock A. M., the said writ of execution was delivered to said defendant, who then and ever since, and now was and is the duly commissioned, qualified and acting sheriff in and for the county of St. Clair aforesaid, to be executed, by virtue of which said writ, and in the life-time thereof, to wit, on the 27th day of July, 1861, this defendant, as sheriff as aforesaid, by his deputy, seized and took and levied upon said goods and chattels in said declaration mentioned. And the said defendant in fact says that the said plaintiffs, as trustees as aforesaid, took possession of said railroad and its effects, and exercised its franchise in its corporate name, on, etc., at, etc., and before the cause of action for which said judgment was rendered, accrued; and were in possession of said railroad, and its effects and goods and chattels in said declaration mentioned, and exercising its franchises in its corporate name as aforesaid, when the said cause of action accrued, and so continued until at and after the said levy of said execution as aforesaid; wherefore the

said defendant seized and took and levied upon said goods and chattels in said declaration mentioned, as he lawfully might for the causes aforesaid, which are the taking and detention in said declaration mentioned," etc.

Replications were filed to the first and second pleas, which were demurred to; demurrer sustained. And the plaintiffs, at the March term, 1862, of said court, filed the following amended replications, to wit: "And the said plaintiffs, as to the defendant's first and third pleas severally pleaded, say, *precludi non,* because they say that they did not exercise the franchises appertaining to the said Terre Haute, Alton and St. Louis Railroad, in the name of said corporation, nor did they collect and receive bills, tolls, etc., in the name of said corporation, nor was process issued in the suits mentioned in said pleas, as the agents of the plaintiffs exercising said franchise in the name of said corporation, as alleged in said plea, nor was said suit defended by the attorney of plaintiffs, but they allege that said corporation was defended by attorney of said corporation, and this they pray may be inquired of by the country.

"And for a further replication in this behalf, the said plaintiffs say, that the said Shook did not recover a judgment in manner and form as he has alleged in the said first and second pleas; and this they pray may be inquired of by the country.

"And for a further replication, plaintiffs say, that there was no such execution issued and levy made, as alleged in said pleas of defendant; and of this they put themselves upon the country.

"And for a further replication, plaintiffs say, that the property levied upon, as in said pleas alleged, was not the property of the defendant in said execution, but was the property of the said plaintiffs, and was not liable to be levied upon by said execution; and this they pray may be inquired of by the country."

To which said several replications the defendant filed the following rejoinder, to wit: "And the said defendant, as to

the several amended replications of said plaintiffs, wherein they put themselves upon the country, doth the like."

The cause was tried at the October term, 1861, of said court, by the court, a jury having been waived.

The plaintiffs introduced one *William D. Griswold*, who testified that the property in question belonged to plaintiffs (appellants) ; that on December 12, 1859, the board of directors of the Terre Haute, Alton and St. Louis Railroad Company surrendered the said railroad to plaintiffs, as trustees of the bondholders under the second mortgage deed. Witness was then president of the board of directors, and had been since June of that year, when the mortgage had become forfeited for the non-payment of interest. Possession of the road and property belonging thereto was taken by said trustees on such surrender. That in the winter of 1859 and 1860 the president and said company sold the personal property to said trustees for $39,000, or $40,000, which was paid in cash. After said surrender, witness, as superintendent, operated said road for said trustees, under power of attorney from them. Witness managed said railroad property in the name of said trustees and in no other name, since December 12, 1859. That sometimes, for short, the word trustees was used, but in all contracts the individual names of the plaintiffs were used. That the benches in dispute, were made after the trustees took possession of the road and property. That the property in question, excepting said benches, is a portion of the personal property acquired by said trustees as aforesaid. That when witness ceased to be president of said company, in June, 1850, Mr. Butler, of New York, became his successor. Witness employed counsel for Mr. Butler, at his request, to defend the suit of said Shook. Witness, as agent for the trustees, employed all the agents on the line, and there never has been any agent of the corporation in this State since the surrender, except witness, who acted as president of said company, until June, 1860.

The corporation, for the purpose of holding the franchise, was kept alive by having a president and board of directors elsewhere. The trustees, after they took possession of the

road, used the same passenger tickets, and similar notices were published as before, while witness was superintendent, and the name of the corporation on the cars was continued.

*H. W. Miller* testified, on behalf of plaintiffs, that in December, 1859, the employees, of whom he was one, of the Terre Haute, Alton and St. Louis Railroad, received notice of the surrender of the road, and that from that time on, the business was managed in the name of the trustees. Books and blank papers were made out in their name, and tolls and freight collected.

The defendant then introduced a certified copy of a judgment, in favor of one Aaron W. Shook, against the Terre Haute, Alton and St. Louis Railroad Company, with the declaration and papers appertaining to said suit; also an execution issued thereon, and the levy made by the defendant, the then sheriff, upon the property in dispute.

The court found the issue for the defendant on the second and third pleas; and thereupon the plaintiffs moved for a new trial, because the said finding was contrary to evidence and contrary to law; which motion the court overruled, and the plaintiffs thereupon excepted at the time to the decision of the court in overruling the said motion. Thereupon the plaintiffs moved for a judgment in their favor, *non obstante verdicto*, because there was a departure in pleading, and because the issues were immaterial; which said motion was overruled, and judgment for costs given in favor of the defendant, and a writ of *retorno habendo*. The plaintiffs excepted at the time to the decision of the court in overruling the motion.

The appellants now assign for error in the court below: The overruling of the motion for a new trial; the overruling of the motion for judgment for plaintiffs "*non obstante verdicto;*" and the rendering of a judgment in favor of the defendant.

It is contended by the appellants, that inasmuch as they acquired the property in controversy by purchase, it ceased to be liable to be taken on an execution against the corporation. That to make them liable, they should have

24

been made parties to the suit, and have had an opportunity to be heard; that they had no interest in defending a suit against the corporation. And they ask, if they are any more liable on a judgment obtained against the corporation after the surrender of the road, than before. In *Palmer* v. *Forbes et al.*, 23 Ill. 318, this court said, that the purchasers under the trust deeds were endowed with sufficient powers to run the road, and for this purpose, might use their own names, or adopt any other convenient business name, and were under no necessity of adopting the name of the company, to whose right in the property they have succeeded. On this principle, this case turns.

The facts show, that the suit, originally brought by Shook, against the railroad company, was defended by the trustees, in the corporate name of the company, and the name was continued on the cars, and no change made in their public notices. It is too late now to say they had other names in which they did their business. They did their business out of which the judgment originated, in the name of the company. If A. B. is sued by the name of C. D. & Co., and pleads not against it, he will be bound by the judgment, that is certain. Suppose the trustees had executed a note in the name of the company, using that name for convenience, or display, or for any other like purpose, would not their property be liable to pay it after judgment and execution? We apprehend there can be but one answer to the question. Whatever their private arrangements might have been, with their employees, and with persons they contracted with, they held themselves out to the world, as doing business, and running the road in the name of the Terre Haute, Alton and St. Louis Railroad Company, and for liabilities so incurred, their property must be responsible. If it was not so, the public would be very insecure.

Though a suit might be instituted against the trustees individually, by their own names, no objection is perceived why one cannot be maintained against them by the name they use. It is not uncommon for corporations, and associations,

and even individuals, to transact business under different names. Names are nothing. No other point is pressed on the consideration of the court.

The judgment must be affirmed.    *Judgment affirmed.*